UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BUEHNER, | ) | Case No.: 1:05 CV 1757 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| DAVID BOBBY, | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

Now pending before the court is Petitioner Michael Buehner's ("Petitioner" or "Buehner") Petition for Writ of Habeas Corpus ("Petition," ECF No. 1), pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state court conviction for two counts of murder in violation of O.R.C. § 2903.01(A).  This action was referred to Magistrate Judge James S. Gallas to prepare a Report and Recommendation ("R&R").  (R&R, ECF No. 13.)

For the reasons herein, the court adopts the R&R.  The court denies all of Buehner's claims.  The court hereby dismisses Buehner's petition for a writ of habeas corpus.

## I. FACTS AND PROCEDURAL BACKGROUND

Michael Buehner is a prisoner in state custody seeking habeas corpus relief under 28 U.S.C. § 2254 from his convictions on two counts of murder (under alternate theories for the same victim, Saunders) with firearm specification and life sentence with parole eligibility after 15 years plus 3 years on the firearm specification. The case arose from a shooting incident which occurred on May

24, 2001 during a drug transaction.

The facts of the case, as detailed by the Court of Appeals of Ohio, Eighth District, are:

> In the early morning hours of May 24, 2001, Buehner received a telephone call at his home on Ottawa Avenue in Cleveland. With Randy Price driving Buehner's black pickup truck, the two men proceeded to East 91st Street and stopped. An unidentified black male got into the cab next to Buehner and the three drove off northbound.
>
> At that same time, people were socializing outside of 9314 Marah Avenue in Cleveland, the home of Lawone Edwards. Henry Harris, who was standing in Edwards' driveway, testified at Buehner's trial that Edwards and Jerry Saunders were selling drugs to passing motorists near the corner of Marah and East 93rd. Edwards admitted that he and Saunders were, indeed, selling crack cocaine there that morning when a pickup truck stopped and its black male passenger asked about buying one hundred dollars' worth of crack. Edwards and Saunders jumped into the bed of the truck and told the white male driver to go east and then told him to stop near a home at 9520 Marah.
>
> Edwards claimed that when he and Saunders got off the truck, he stood five to six feet in front of the truck to act as a lookout and Saunders went to the truck's passenger door. Edwards testified that the unidentified black man got out of the truck and told Saunders to deal with the white male, later identified as Buehner, in the "middle" seat of the cab, and the driver remained in the truck but did not appear to participate in the discussion that followed. As Saunders, leaning through the window of the open truck door, prepared to conclude the drug transaction, Edwards said he asked Buehner to show him his money before he gave him the crack cocaine. He claimed that Buehner quickly pulled a gun and said something to the effect of "Here's your money right here." Edwards stated that Saunders then turned to his right and started to run and that Buehner shot either once or twice at Saunders, who ran a short distance and collapsed. Edwards said that the "shooter" then pointed the gun at him and he turned and ran southeast across a vacant lot and eastbound through several backyards. He claimed he heard two or three more shots as he ran, and then he hid under a parked car in a driveway a few houses away until the occupants of the pickup drove away. He stated that Buehner, on foot, and Price, still in the pickup, attempted to find him in the backyards of homes to the east of 9520 Marah but abandoned their search when he heard one of them tell the other to forget about him and "get the drugs, [and] get the money."
> [...]
> Price claimed that Buehner told him that he shot Saunders

> because he had sold him $450 in fake "wet" cigarettes earlier in the day. Price also testified that Victoria Thomas, Buehner's grandmother, drove him back to the scene of the shooting later that afternoon, and that they attempted to locate any spent shell casings that Buehner may have inadvertently left behind. Thomas denied this allegation and stated that when she retired for the night at about 1:30 a.m. on May 24, Buehner was sound asleep on her living room sofa.
>
> Saunders had been shot twice. One bullet when [sic] through his left arm, entered his chest cavity, and pierced his left lung, heart and right lung. The trajectory of this bullet was back to front and slightly downward through the body. Another bullet entered Saunders' rear upper leg and exited out his right thigh. This bullet traveled in a slightly upward path exiting about four inches higher than where it entered. The absence of any gunshot residue on Saunders' body or clothing was evidence that the person who shot him fired his gun from a distance of more than four feet. Cleveland Homicide Detective Sahir Hasan responded to the shooting after 3:00 a.m. and supervised the collection of evidence, including Saunders' red Philadelphia Phillies baseball cap, Edwards' blue Denver Broncos leather jacket, one spent nine millimeter shell casing, and a spent bullet which had lodged in the exterior of the home at 9520 Marah Avenue. The bullet recovered from the crime scene and the bullet taken from Saunders' body were fired from the same gun.

*State v. Buehner*, 2003 WL 21469159, at *1-2 (Ohio App. 8 Dist., June 26, 2003).

Price implicated Buehner as the person who shot Saunders. *Id.*, at *3. Price plead guilty to one count of involuntary manslaughter and one count of aggravated robbery. He testified at Buehner's trial while he was awaiting sentencing on these charges.

A jury found Buehner guilty of two counts of murder, one count of attempted murder, and a three-year gun specification. *State v. Buehner*, 2003 WL 21469159, *1 (Ohio App. 8 Dist. June 26, 2003). He appealed this sentence, and the Ohio Eighth District Court of Appeals overturned his conviction for attempted murder due to insufficient evidence. *Id.*, at *7. Both Petitioner and the State of Ohio further appealed this matter to the Ohio Supreme Court. The court dismissed the cross-appeal on October 10, 2003, and refused to accept jurisdiction of the state's direct appeal on

February 2, 2004. *State v. Buehner*, 797 N.E.2d 94 (Ohio 2003); *State v. Buehner*, 100 Ohio St.3d 1485 (Nov. 19, 2003). The matter was remanded to the Common Pleas Court for re-sentencing pursuant to reversal in part by the Ohio Eighth Appellate District. (Pet.'s Objections to R&R, ECF No. 15, at p. 4.)

On October 7, 2003, Buehner filed an application to reopen the appellate judgment that affirmed his conviction for murder pursuant to Ohio Appellate Rule 26(B). *State v. Buehner*, 2004 WL 225474 (Ohio App. 8 Dist. Feb. 2, 2004). The court denied Buehner's application. *Id*. Petitioner appealed, and the Ohio Supreme Court refused to review the appeal. *State v. Buehner*, 102 Ohio St.3d 1146 (May 12, 2004); *State v. Buehner*, 102 Ohio St.3d 1461 (May 26, 2004).

In his Petition, Buehner alleges two grounds for relief: (1) ineffective assistance of appellate counsel; and (2) insufficiency of the evidence/actual innocence. This court referred the case to Magistrate Judge Gallas for preparation of a Report and Recommendation. (R&R, ECF No. 2.)

On October 15, 2007, Magistrate Judge Gallas issued his R&R, recommending that the court deny Buehner's Petition. ("R&R," ECF No.13.) The Magistrate Judge first found that Petitioner's insufficiency of evidence claim was procedurally defaulted. Next, the Magistrate Judge recommended that the court deny Buehner's Petition in regard to his ineffective assistance of counsel claims. The Magistrate Judge based this recommendation on his finding that Buehner failed to establish that the state court's decision that Petitioner's appellate counsel was not ineffective was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court or that the state court decision was based on an unreasonable interpretation of the facts in light of the evidence. (*Id*. at 17-18.) Buehner filed Objections to the R&R on November 5, 2007, disputing only the Magistrate Judge's recommendation that Buehner's Petition should be denied

based on the ineffective assistance of appellate counsel claim. (Pet.'s Objections, ECF No. 15, at 7.)

## II. § 2254 STANDARD

An application for a writ of habeas corpus by a person in state custody may only be granted upon federal review where state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly-established federal law where it arrives at a different conclusion than previously decided by the Supreme Court in a case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The Supreme Court has found that,

> A state-court decision involves an unreasonable application of [Supreme] Court[ ] precedent if the state court identifies the correct governing legal rule from th[e] [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of th[e] [Supreme] Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.*, at 407; *Girts v. Yanai*, 501 F.3d 743, 752-53 (6th Cir. 2007); *see also Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

## III. LAW AND ANALYSIS

Petitioner alleges that his appellate counsel was ineffective for failing to raise the following issues: (1) the comments by the prosecutor during closing arguments constituted prosecutorial

-5-

misconduct; (2) trial counsel's failure to request a jury instruction on the lesser included offense of involuntary manslaughter constituted ineffective assistance of counsel; and (3) the trial court abused its discretion by allowing the jury to consider prejudicially irrelevant evidence. (Pet. Ex. B ¶ 7.)

### A. Insufficiency of Evidence/Actual Innocence Claim

Buehner argued in his Petition that the prosecution failed to present sufficient evidence to premise a conviction and also that Petitioner is "actually innocent." (Ex. B to Petition, ECF No. 1-3, at p. 8) ("The state failed to introduce sufficient evidence upon which to premise a conviction for aggravated murder .... The Petitioner in this matter is actually innocent."). The Magistrate Judge found that this claim is procedurally defaulted because Petitioner did not raise this issue on direct appeal and because Petitioner could not demonstrate "cause" and "prejudice" to excuse his failure to present this claim to the state's highest court. (R&R, at pp. 5, 6.) Judge Gallas further found that Buehner did not produce any new evidence to support his actual innocence claim as required by the Supreme Court. (*Id*.) *See, e.g., House v. Bell*, 547 U.S. 518, 537-40; *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In any event, Buehner did not object to this finding. (Pet.'s Objections, ECF No. 15, at p. 3 ("The petitioner does not object to the sufficiency challenge. He does object to aspects of the IAC appellate issue.").) The court finds, after careful review of the Magistrate Judge's R&R with respect to the insufficiency of evidence claim, that the Magistrate Judge's conclusions that Petitioner did not raise this issue on direct appeal and that he did not produce new evidence of his innocence are fully supported by the record and controlling case law. Accordingly, the court finds that Petitioner's insufficiency of the evidence claim is not well-taken.

### B. Ineffective Assistance of Appellate Counsel

Magistrate Judge Gallas determined in his R&R that Buehner's three ineffective assistance

of counsel claims were without merit. Magistrate Judge Gallas determined that the state court's finding that Buehner's appellate counsel was not ineffective was not contrary to or an unreasonable application of clearly-established law. This court finds similarly.

### 1. Res Judicata: Procedural Default

This court agrees with Magistrate Judge Gallas that Respondent waived the defense of procedural default by not raising it in its Answer to the Petition. (R&R, at pp. 6-7, citing *Garner v. Mitchell*, 502 F.3d 394, 401 (6th Cir. 2007) (reversed but not on this principle)); *Trest v. Cain*, 522 U.S. 87, 89 (1997) ("Thus, procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'") (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996) ("If the misrepresentation claim was addressed at some stage of federal proceedings, the Commonwealth would have been obligated to raise procedural default as a defense, or lose the right to assert the defense thereafter.")); see *Jenkins v. Anderson*, 447 U.S. 231, 234, n. 1 (1980). The State, in its Answer to the Petition, agreed with the procedure that Buehner followed in this case, namely filing a 26(b) motion. (Respondent's Answer/Return of Writ, ECF No. 10, at p. 11) ("Allegations of ineffective appellate counsel must be brought before the Court of Appeals, pursuant to an application for reopening. Appellate Rule 26(B) states that ... .").

### 2. Ineffective Assistance of Counsel Standard

In *Strickland v. Washington*, 466 U.S. 668, 688 (1984), the Supreme Court set out the federal standard for ineffective assistant of counsel in the following two-prong test, holding that a defendant must prove that: "(1) counsel's representation 'fell below an objective standard of reasonableness,' and (2) counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S.

470, 477 (2000) (quoting *Strickland*, 466 U.S. at 688, 694). This standard also applies when evaluating the effectiveness of appellate counsel. *Id*. The court must review the merits of the underlying claims in order to determine whether Petitioner was prejudiced by counsel's ineffective assistance. *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005); see also *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different.")

### 3. Application

As stated above, Petitioner argues that his appellate counsel was ineffective for three reasons. First, Petitioner maintains that appellate counsel did not raise the issue of prosecutorial misconduct during the prosecutor's closing statement at trial. Second, Petitioner contends that appellate counsel did not address trial counsel's failure to request a jury instruction for the lesser included offense of involuntary manslaughter. Third, Petitioner asserts that appellate counsel did not argue that the trial court had abused its discretion by allowing the jury to consider prejudicially irrelevant evidence. Petitioner contends that appellate counsel's failure to raise the above-stated issues on appeal demonstrates that appellate counsel was ineffective, therefore violating Petitioner's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments.

Accordingly, for Petitioner to prevail in the instant case he must show that the state court's decision regarding ineffective assistance of appellate counsel was either contrary to and/or an unreasonable application of clearly established federal law. To do so, Petitioner must demonstrate that appellate counsel's representation (1) fell below an objective standard of reasonableness; and (2) appellate counsel's deficient performance prejudiced Petitioner. In order to analyze the above two factors, the court must address the merits of the underlying claims of prosecutorial misconduct,

failure to request a jury instruction for a lesser included offense, and the inclusion of allegedly prejudicial and irrelevant evidence. *Maples*, 427 F.3d at 1025.

For the reasons stated below, the court finds that Petitioner's Objections are not well-taken regarding the three claims for ineffective assistance of counsel.

*a. Failure to Appeal Issue of Prosecutorial Misconduct at Trial*

Petitioner argues that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct on appeal. The state appellate court, when analyzing Petitioner's prosecutorial misconduct argument stated:

> The test for prosecutorial misconduct . . . is whether the remarks are improper and, if so, whether the prosecutor's remarks prejudicially affected substantial rights of the defendant. Any comments made by the prosecutor during closing argument were harmless in light of the overwhelming evidence of Buehner's guilt. Thus, Buehner was not prejudiced by the comments as made by the prosecutor during closing argument.

*State v. Buehner*, No. 81722, 2004 WL 225474 (Ohio App. 8th District, Feb. 2, 2004) (citations omitted). Magistrate Judge Gallas stated in this R&R that, "[i]n denying reopening on alleged prosecutorial misconduct in closing argument, the state decision rested on harmless error in light of the overwhelming evidence of Buehner's guilt. ... This was not contrary to or an unreasonable application of clearly established law." (R&R, at pp. 10-11.) This court agrees.

The Sixth Circuit requires that the prosecutor's comments be both improper and flagrant in order to grant relief on habeas review. *Girts v. Yanai*, 501 F.3d 743 (6th Cir. 2007); *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). To constitute a violation of due process, the prosecutorial misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *U.S. v. Carroll*, 26 F.3d 1380, 1386 (6th Cir. 1994) (quoting *U.S. v. Thomas*, 728 F.2d 313, 319-20 (6th Cir. 1984)). On federal habeas review, prosecutorial

misconduct is subject to harmless-error analysis. *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 2002); *West v. Bell*, 550 F.3d 542, 566 (6th Cir. 2008) ("While it is true that the prosecutor asserted his personal opinion as to West's credibility, the error was harmless given the evidence submitted to the jury that West had contradicted himself on numerous occasions and had given varying accounts of crimes."). The prosecutor's conduct must infect "the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

This court must therefore determine whether or not the state court's decision was contrary to the Sixth Circuit's two-prong prosecutorial misconduct test. If so, the court must then determine whether appellate counsel was ineffective for not raising the issue of prosecutorial misconduct on appeal.

The first prong of the Sixth Circuit's test for prosecutorial misconduct is that the statements must be improper. A prosecutor's comment "may be improper if it is calculated to incite the passions and prejudices of the jury or if it is designed to completely undercut the sole defense theory." *United States v. Clark*, 319 F. App'x 395, 405-06 (6th Cir. 2009). Further, it is "improper for a prosecutor, during closing arguments, to bring to the attention of the jury any purported facts that are not in evidence and are prejudicial." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (internal quotation marks omitted). Importantly, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996).

The second prong of the Sixth Circuit's test for prosecutorial misconduct is that the statements must be flagrant. The four factors to determine flagrancy are: "(1) the likelihood that

the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005); *Goff v. Bagley*, 601 F.3d 445, 480 (6th Cir. 2010).

Without providing copies of the pages of the transcript that he references, Petitioner argues that the prosecutor made the following comments:

(1) "Is this guy right here the one that did the shooting.  And I can't imagine a legitimate reason for you to come up with to say that he's not the one who did the shooting."

(2) The prosecutor stated that the first mention of Petitioner's alibi was during Petitioner's grandmother's testimony and Petitioner did not call other witnesses from his witness list to corroborate his alibi because the alibi was fabricated, but Petitioner argues that the defense counsel had filed an alibi notice almost two months before his grandmother's testimony; and

(3) The prosecutor stated that the casings and bullets found on the crime scene both came from the same gun attributed to Petitioner, a nine millimeter Luger, but Petitioner argues that the bullets actually causing the victim's death were fired from a .38 caliber gun.  (Ex. B to Petition, ECF No. 1-3, at pp. 2-3.)

Although Buehner argues that some evidence presented at trial contradicts these statements by the prosecutor, he does not substantiate any of these statements by supplying transcript pages to the court in support of his argument.  Furthermore, he often does not quote the prosecutor verbatim. He also provides no proof that his counsel submitted a notice of an alibi before trial or that the bullets found in the victim's body were from a .38 caliber gun.  Therefore, the court finds that Buehner has not proven that the prosecutor made improper statements.

Further, he has not demonstrated that the statements were (1) likely to mislead the jury or prejudice the defendant; (2) extensive rather than isolated; (3) deliberately made. *Bates*, 402 F.3d at 641 (6th Cir. 2005); *Goff*, 601 F.3d at 480. Further, Buehner has not demonstrated that the statements were significant in light of the total strength of the evidence against the defendant. *Id*. Buehner must show these four factors fall in his favor in order to prove that the prosecutor's comments were flagrant.

In any event, the court finds that the Ohio state court's determination that any error would be harmless in light of the overwhelming evidence against Buehner is not an unreasonable application of clearly-established law. *Macias*, 291 F.3d at 451. Notably, Edwards, a person involved in the drug transaction, testified at Buehner's trial that he saw Buehner shoot the victim. *State v. Buehner*, 2003 WL 21469159, at *1-2 (Ohio App. 8 Dist., June 26, 2003). Price, Buehner's co-defendant who plead guilty to one count of involuntary manslaughter and one count of aggravated robbery, corroborated this testimony by testifying that Buehner told him that he shot Saunders. *Id*. Therefore, because the court finds that the prosecutor's actions at trial do not amount to prosecutorial misconduct, Buehner's appellate counsel was not ineffective for not raising the issue of prosecutorial misconduct on appeal. The court hereby dismisses Buehner's ineffective assistance of counsel claim in this regard.

*b. Whether Appellate Counsel Was Ineffective for Failing to Argue that Trial Counsel's Failure to Request a Jury Instruction for a Lesser Included Offense*

Petitioner contends that appellate counsel was ineffective for not arguing that trial counsel provided ineffective assistance for failing to request a jury instruction for involuntary manslaughter as a lesser included offense. The state court held that:

> The decision to request a jury instruction with regard to a lesser included offense constitutes trial strategy and does not establish ineffective assistance of trial counsel. *State v. Griffie* (1996), 74 Ohio St.3d 332, 658 N.E.2d 764. In addition, Buehner was not entitled to an instruction with regard to the lesser included offense of involuntary manslaughter since he denied any involvement in the charged offenses of murder. *State v. Taylor*, Cuyahoga App. No. 79274, 2002-Ohio-7, reopening disallowed, 2003-Ohio-2295, Motion No. 346272.

*State v. Buehner*, No. 81722, 2004 WL 225474, at *2 (Ohio App. 8 Dist. Feb. 2, 2004).

The state court properly cited the *Strickland* standard in its decision, but then it applied a different state standard under *Griffie* and *Taylor*, which discuss applying deference to trial counsel's trial strategy and also address when a jury instruction for a lesser included offense must be given. As the Magistrate Judge noted:

> The state decision was grounded on a simple, but no longer appropriate, rule that counsel's decision whether or not to request an instruction on a lesser included offense can be dismissed as a matter of trial strategy. The state appellate court while not relying on *Strickland* and *Jones*, did, nevertheless, acknowledge these Supreme Court decisions as setting the appropriate standards of review.

The Magistrate Judge correctly applied *Holland v. Jackson*, 542 U.S. 654, 654 (2004), to this situation, which states that "§ 2254(d) requires that 'state court decisions be given the benefit of [a] doubt'" when determining whether the state court unreasonably applied federal standards. In addition, the court must move through its analysis with a strong presumption that counsel's performance was within a broad range of reasonableness because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002).

The court notes that in *Langford v. Bradshaw*, 2007 WL 1299214 (N.D. Ohio, April 30, 2007), the petitioner sought relief from his state court conviction, arguing that appellate counsel was

-13-

ineffective for not addressing trial counsel's failure to request a jury instruction on the lesser included offenses of murder. In response to the petitioner's argument that a jury instruction on involuntary manslaughter should have been requested, the court concluded that trial counsel's performance was reasonable when he "opted for the exculpatory defense theory over arguing that his client was engaged in felonious criminal activity," as the petitioner could not be "both blameless and at fault for the death." *Id*. at 6.

Here, as in *Langford*, requesting a lesser-included offense instruction would have caused Petitioner to essentially abandon his defense of complete innocence on all charges and admit to an underlying felony. Trial counsel's failure to request the lesser included offense instruction does not constitute ineffective assistance because he chose a specific defensive strategy that could not involve both complete innocence and unintentional killing as a result of a felony. Therefore, appellate counsel performed in an objectively reasonable manner because failure to request an instruction for involuntary manslaughter would not be a winning argument on appeal. This analysis demonstrates that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, the court denies Buehner's Petition on this ground.

*c. Whether Appellate Counsel was Ineffective for not Raising Issue of Admission of Allegedly Prejudicial and Irrelevant Evidence*

Petitioner argued in his Petition that the trial court's admission of irrelevant evidence denied him the right to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments. (Pet. Ex. B ¶ 15.) Specifically, Petitioner contends that the trial court allowed Randy Price to testify about Petitioner's threats against Price and Price's family, as well as an incident where Petitioner "swung

-14-

an ax at someone." (*Id.*, at ¶¶ 16-17.)  Respondent argues in its Answer that Petitioner's claim is without merit and in the alternative, that it is procedurally defaulted.  (Answer, ECF No. 10, at pp. 14-15, fn. 3.)

The Magistrate Judge determined that this claim was procedurally barred because Petitioner did not fairly present the claim in state court.  (R&R, at p. 12.)  In his Motion to Reopen, Petitioner argued that he suffered "[i]neffective assistance of counsel for not objeting [sic] to possible other acts of crimes by the defendant in violation of the 6th and 14th Amendments and appellate counsel for not citing this error."  *Buehner*, 2004 WL 225474, at *3.  The state decision reasoned:

> Buehner argues that his trial counsel "allowed many statements to go unchecked that should have been objected to." Buehner has failed to specify what statements were subject to objection by trial counsel or how he was prejudiced by the admission of the alleged improper statements.

In his habeas Petition, Petitioner argued that "Appellate counsel failed to raise the following issues: ... II.  The Trial Court Abused its Discretion by Allowing the Jury to Consider Prejudicially Irrelevant Evidence."  (Exh. B to Pet., ECF No. 1-3, at p. 3.)  Therefore, Buehner challenged the effectiveness of his trial counsel in his Motion to Reopen and challenged the effectiveness of his appellate counsel in his Petition for a Writ of Habeas Corpus.

The Magistrate Judge correctly stated that to be "fairly presented" the federal ground must be presented under the same theory as presented to the state court.  *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004).  A petitioner must have given the state court a "full opportunity to resolve any constitutional issues by involving 'one complete

round' of the state's appellate review system" in order to satisfy the fair presentation requirement. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). The court in *Caver* went on to state that, "to the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts." *Id.*, at 346-47. In this case, Buehner did not object to the fact that appellate counsel did not appeal the inclusion of certain testimony by Randy Price in his Motion to Reopen. Therefore, he never fairly represented his claim to the state court. This court agrees with Magistrate Judge Gallas's conclusion that this claim should be dismissed.

## IV.  CONCLUSION

For the reasons stated above, the court finds that Petitioner's claims are not well-taken and dismisses Petitioner's Writ for Habeas Corpus (ECF No. 1).

The court therefore certifies that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the issues - other than the issue of ineffective assistance of appellate counsel for not raising the issue of prosecutorial misconduct - could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

However, regarding Petitioner's argument that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct on direct appeal, the court issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c), and Fed. R. App. P. 22(b), based on its finding that this claim is debatable among jurists of reason.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*

-16-

                                                              CHIEF JUDGE
                                                              UNITED STATES DISTRICT COURT

September 30, 2010